GEORGE H. COBURN *vs.* JOHN M. CLARK.

A vessel which is attached in proceedings to enforce a lien thereon, under *St.* 1855, *c.* 231, cannot rightfully be appraised and sold during the pendency of the proceedings.

TORT against the sheriff of Suffolk, for the conversion of the steamboat Fairy by his deputy.

In the superior court, it was agreed that the steamboat was attached by the defendant's deputy by virtue of a process of attachment issued in proceedings to enforce a lien thereon, instituted by Chauncy Page, who subsequently presented to the deputy a petition to sell her, under Rev. Sts. *c.* 90, and appointed an appraiser, and the deputy appointed two appraisers, one for himself and one for the plaintiff, who refused to take any part in the proceedings; and under this petition and the subsequent proceedings thereon the steamboat was sold.

On these facts, judgment was rendered for the plaintiff, and the defendant appealed to this court.

*J. G. Abbott*, for the defendant.

*H. W. Paine*, for the plaintiff.

DEWEY, J. The justification of the sale of the plaintiff's steamboat rests upon the construction of *St.* 1855, *c.* 231, giving in certain cases a lien on ships and vessels, and directing the mode of procedure to enforce the same. In reference to the latter, it is provided in § 3 that "at the time of commencing the process, or of entering or filing the petition, a process of attachment against such ship or vessel, her tackle, apparel and furniture, shall issue, and shall continue in force, or may be dissolved by bond, like attachments in civil cases, but such dissolution shall not dissolve the lien."

Under such process of attachment, the deputy sheriff took possession of the vessel of the plaintiff, and while thus under attachment, upon the petition of the creditor, had the same appraised and sold at public auction, under the claim of right so to do, by virtue of the provisions of the general attachment

law in reference to the sale on mesne process of goods liable to perish or waste, or which cannot be kept without great and disproportionate expense. Rev. Sts. *c.* 90, § 58. These proceedings were *ex parte,* the owner of the vessel refusing to coöperate therein. The question is, whether under an attachment of the vessel upon a petition for enforcing the lien upon the same, the provisions of Rev. Sts. *c.* 90, § 58, are applicable, and justify a sale, upon the application of the creditor to the attaching officer.

The defendant insists that they do, and that the attachment carries with it all the incidents of ordinary attachments. This he infers from the language of the statute, that such attachment " shall issue and shall continue in force, or may be dissolved by bond, like attachments in civil cases."

But this, we think, is giving too much effect to a mere naked provision authorizing an attachment, and also its dissolution by a bond to pay the plaintiff what he may recover. The authority to attach does not of itself give any authority to sell on original process, and before judgment and execution. Such authority to attach existed long anterior to *St.* 1822, *c.* 93, which gave the earliest authority for a sale on mesne process in certain cases. It was only by virtue of this particular provision thus created and continued by Rev. Sts. *c.* 90, that this power of sale has existed.

This provision, when applied to the cases to which the statute applied it, was important and useful, and in its practical working could only affect the interest and rights of the two parties to the suit. The defendant, whose goods were attached, was the only person whose right of property would be devested by a sale. The attaching creditor was the only creditor who had any interest in the proceeds of such sale.

The whole proceedings in the case of the lien on ships, and the purposes of the attachment are peculiar in their character. In ordinary attachments, the object is to acquire a lien over property not previously subject to it. Not so in proceedings under the lien law. The case assumes the existence of a legal lien existing on the ship, and the object is to have more certain

means of enforcing that lien, whenever it shall be judicially declared to exist. The attachment under the process to enforce a lien is not made under an order to attach generally the goods and chattels .of the defendant in the action, but to attach a certain specified vessel, and hold the same. The reason for such attachment to enforce a lien upon a vessel is quite obvious. In the case of a similar lien upon houses and other buildings, to which class of cases the proceedings to enforce liens on vessels are quite similar, and indeed are regarded by the statute to be similar, " so far as the provisions of that statute are consistent therewith," no such necessity exists for seizing by attachment, in the first instance, the property upon which the lien is sought to be enforced, as the property is a fixture, and must of course be within the jurisdiction of the court when any judgment may ne rendered requiring a sale thereof. But in the case of a vessel, the property is movable, and may be here to-day and at Liver-pool long before the time has arrived for a sale founded upon an established lien and decree of the court thereon. Hence it was necessary that, to give effect to this proceeding in case of a vessel, it should be seized and kept in the custody of an officer of the court to await the final judgment, unless the defendant elects to give a bond with sureties to pay all such sums as may be found due on the hearing of the petition. This proceeding apparently assumes the character of a proceeding *in rem*, and if so, in analogy to proceedings of that nature in enforcing liens on vessels in the United States admiralty court, the sale of the vessel in such case would be a valid transfer of the title to the purchaser, irrespective of any title in a third person, however valid.

But such effect should not be the result of a sale made by consent of an attaching creditor and his debtor merely, or, as the case was here, the creditor alone. It could only properly result from a judicial decree, upon notice to all persons interested, with the opportunity to establish their rights as claimants.

But it is enough for the present case to say, that the statute has given no authority to make a sale of the vessel as in the

18 *

case of ordinary attachments. So far from assuming to give all the incidents of an attachment in civil suits under the authority to attach, the statute has by an additional provision directly given to the defendant the right to dissolve such attachment by giving bond, like attachments in civil cases, all which was entirely superfluous, if the power to attach already given carried with it all the incidents found in Rev. Sts. *c.* 90. From the fact of thus adding the provision as to dissolution by bond, and omitting the provision as to sale under the attachment merely, some ground is furnished for the argument that all the incidents of an ordinary attachment that were intended to be engrafted upon the attachment of a vessel for a lien were specially stated in the statute.

If a sale at an earlier period than the final judgment upon the petition should be deemed necessary to prevent great expenses in preserving the property, or diminution of its value, it is quite obvious that provision should be made for notice to all persons interested; and if it is to operate as a legal transfer of the ship as against all third persons, such order for sale could properly be made only by some judicial officer having cognizance of the matter, under some legislative provision which might be made, adapted to secure the rights of all persons.

In the statute, as it now exists, we find no authority for the act of the attaching officer in making sale of the vessel. The result is therefore that judgment is to be entered for the plaintiff, and the case to be sent to an assessor to assess the damages. .